# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Todd Mortensen,

    Plaintiff,      **MEMORANDUM OPINION AND ORDER**

v.               Civil No. 09-706 ADM/RLE

Hibbing Taconite Company and
United Steel Workers Local Union 2705,

    Defendants.

_____

Dan Rasmus, Esq., Rasmus Law Office, LLC, Minneapolis, MN, on behalf of Plaintiff.

R. Thomas Torgerson, Esq., Hanft Fride, PA, Duluth, MN, on behalf of Defendant Hibbing Taconite Company.

Mark W. Bay, Esq., John G. Engberg, Esq., Peterson, Engberg & Peterson, Minneapolis, MN, and Robert D. Clark, Esq., United Steelworkers of America, Pittsburgh, PA, on behalf of Defendant United Steel Workers Local Union 2705.

_____

## I. INTRODUCTION

On April 22, 2010, the undersigned United States District Judge heard oral argument on Defendant Hibbing Taconite Company's ("Hib Tac") Motion for Summary Judgment [Docket No. 43] and Defendant United Steel Workers Local Union 2705's ("the Union") Motion for Summary Judgment [Docket No. 49]. In his Amended Complaint [Docket No. 19], Plaintiff Todd Mortensen ("Mortensen") asserts claims under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, and the Minnesota Human Rights Act ("MHRA"), Minn. Stat. §§ 363A.01-.41. For the reasons stated herein, Defendants' Motions are granted.

## II. BACKGROUND[1]

Hib Tac is a taconite mining, concentrating, and pelletizing operation in Hibbing, Minnesota. Kern Aff. [Docket No. 47] ¶ 2. The Union represents employees of Hib Tac in their negotiation of collective bargaining agreements and arbitrations of disciplinary grievances. See Am. Compl. ¶¶ 2, 12; Rebrovich Aff. [Docket No. 55] ¶ 3. Mortensen began working at Hib Tac in 1989 as a laborer, and was a member of the Union at all times relevant to this litigation. Torgerson Aff. [Docket No. 46], Ex. B (Mortensen Depo.) at 9:8-12:24; Am. Compl. ¶¶ 1-2; Rebrovich Aff., Ex. D at 2.

While operating heavy machinery at Hib Tac in 1993, Mortensen sustained a back injury. Am. Compl. ¶ 3. After Mortensen returned to work, he exacerbated his back injury, suffering a herniated spinal disc that left him permanently disabled. Id. ¶¶ 15-16. After a year and a half recovery period, Mortensen returned to work full time with restrictions on lifting, standing, and sitting. Mortensen Depo. at 15:15-16:8. In the last several years prior to his discharge in January 2008, Mortensen worked as a janitor and was able to perform the essential functions of that position with occasional, brief breaks to stretch his back. Rasmus Decl. [Docket No. 69], Ex. 2 (Mortensen Depo.) at 54:1-15, 91:7-13.

On September 12, 2007, Mortensen was scheduled to work from 11:00 p.m. to 7:00 a.m. Kern Aff., Ex. C at 1. Mortensen was assigned to clean the men's shower during his shift and was to start that task as soon as the pressure washer needed to clean the shower was repaired. Id. At 2:20 a.m., Mortensen's supervisor, Tom Happonen ("Happonen"), went to check on

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Mortensen's progress on cleaning the shower. Id. When he arrived, he found the repaired pressure washer in the shower, but the shower had not yet been cleaned. Id. Happonen went to the janitor's supply room and found that the door was jammed and that he could not open it more than about one half of an inch despite repeated attempts. Id. Happonen twice called out, "open the door," but received no response. Id. After waiting to see if anyone would come out, he pushed the door with his shoulder far enough to walk through. Id. Inside the supply room, he discovered that a steel step had been wedged up against the door to prevent it from being opened, and he saw Mortensen starting to stand up from a pad and pillow laying on the floor. Id. Happonen's impression was that Mortensen had been sleeping, and he told Mortensen that he would "write him up" if he barricaded the door or was caught sleeping again. Id. Happonen accompanied Mortensen to the men's shower to ensure that he started cleaning it. Id.

Approximately two hours later, Happonen went to the men's shower to check on Mortensen's progress. Id. at 2. The task was not yet completed, so Happonen went to look for Mortensen and again found him in the janitor's supply room. Id. When Happonen entered, Mortensen was leaning back in an office chair with his hat pulled down over his eyes. Id. Happonen told Mortensen, "Get up, and get back to the shower," and Mortensen complied. Id.

As Happonen was leaving work at the end of his shift, he met his supervisor, Tom Kemp ("Kemp"), who was just arriving. Id. Happonen explained to Kemp what had happened during Mortensen's shift. Id. Kemp told Happonen that he would check on Mortensen's progress, and he immediately headed to the janitor's supply room. Kern Aff., Ex. D. When he got there, he opened the door and saw Mortensen "kicked back in his chair with his hat over his eyes." Id.

3

Kemp issued Mortensen a "Notice of Possible Suspension" for "Sleeping (Nesting)"[2] and scheduled a hearing for 6:30 a.m. the following day, September 13, 2007. Kern Aff., Ex. E.

The pre-suspension hearing was attended by Mortensen, a representative of the Union, Kemp, Happonen, and three representatives of Hib Tac management. Arb. Tr. at 62:17-20. Mortensen did not dispute that he barricaded the door but provided an explanation that he had been in the supply room because he needed privacy to do stretches for his back pain. Mortensen Depo. at 56:6-58:9; Arb. Tr. at 154:2-9. The management representatives responded that if he needed privacy in the future for medical reasons, he was not permitted to barricade a door and should consult his supervisor. Id. at 154:10-14. As a result of the September 12 incident, Hib Tac suspended Mortensen for five days for "Sleeping/Nesting," "Out of Work Area," and "Improper Work Performance." Kern Aff., Ex. F.

On September 17, 2007, management representatives met with Mortensen and a Union representative and presented to Mortensen a "last chance agreement" warning that any future nesting violations would most likely result in discharge. Arb. Tr. at 62:8-63:17. Mortensen again explained that he had barricaded himself in the supply room because he needed privacy to do his back stretches, and the management representatives again responded that, in the future, if Mortensen needed privacy to address a medical issue, he should speak to a supervisor who would offer an appropriate accommodation. Id. at 65:8-25. Mortensen states that he was told he was required to sign the last chance agreement or risk being discharged immediately. Mortensen Depo. at 127:7-16. Mortensen maintains that the Union representative did not give him any

---

[2] "Nesting" is when an employee "takes [him]self out of the productive work mode" by "seek[ing] out an area [in which] to hide." Torgerson Aff., Ex. A (Arb. Tr.) at 55:6-58:18. Nesting sometimes includes an employee barricading a door. Id. at 119:1-13.

4

advice on whether to sign the last chance agreement. Id.

On Friday, January 4, 2008, Mortensen was scheduled to work from 3:00 p.m. to 11:00 p.m. Arb. Tr. at 23:20-22. That evening, Happonen learned that a Hib Tac employee had been unable to open the door to the janitor's supply room. Id. at 23:25-24:7. Happonen suspected the door was being barricaded, so he went to the supply room and turned the doorknob but was unable to open the door. Id. at 24:11-15. Happonen called one of his superiors to report that he suspected Mortensen was barricading himself in the supply room again. Id. at 25:16-26:11. Happonen's superior directed him to take two employees with him as witnesses, gain access to the room, and, if Mortensen was there, send him home and order him to report back to Happonen's superior at 7:00 a.m. the following Monday morning. Id. at 26:13-25. When Happonen and the other two employees arrived at the supply room, the door was still barricaded. Id. at 28:10-29:1. Using his shoulder, Happonen was able to push the door open halfway. Id. at 29:1-3. Similar to the incident on September 12, 2007, Mortensen had wedged a steel step against the door. Id. at 29:6-12. Mortensen told Happonen that he had barricaded himself in the room because he needed privacy to address what he thought to be a hemorrhoid condition. Mortensen Depo. 71:6-72:13. Happonen ordered Mortensen to go home and report on Monday morning. Arb. Tr. at 29:14-17.

Hib Tac issued Mortensen a "Notice of Possible Suspension" for "Sleeping/Nesting." Kern Aff., Ex. K. Mortensen, a Union representative, and several representatives of Hib Tac management met for a pre-suspension hearing on January 7, 2008. Arb. Tr. at 68:16-69:5. As he had stated at the time of the incident three days prior, Mortensen explained that he barricaded himself in the supply room because he needed privacy to address what he thought at the time to

5

be a hemorrhoid condition. Mortensen Depo. at 75:10-16. After the hearing, Hib Tac informed Mortensen that he was being suspended for five days for "Sleeping/Nesting," "Out of Work Area," "Improper Work Performance," and "Theft of Time." Kern Aff., Ex. M.

On January 8, Hib Tac decided to convert the five-day suspension into a discharge based on the violation of the last chance agreement. Arb. Tr. at 107:11-108:25. The next day, Hib Tac sent a letter to inform Mortensen of the discharge. Kern Aff., Ex. Q. Hib Tac denied the grievance filed by the Union regarding Mortensen's discharge, and the Union appealed Hib Tac's decision to arbitration on March 10, 2008. Kern Aff., Exs. R, S; Rebrovich Aff., Ex. D. at 1. After an arbitration hearing in April 2008, the arbitrator issued an award on June 17, 2008, upholding Hib Tac's decision to discharge Mortensen. Kern Aff., Ex. T.

On November 19, 2008, Mortensen filed a "Notice of Charge of Discrimination" against Hib Tac with the Equal Employment and Opportunity Commission ("EEOC") and the Minnesota Department of Human Rights ("MDHR"). Kern Aff., Ex. U. The EEOC and MDHR dismissed the discrimination charge on January 15, 2009, and February 12, 2009, respectively, and notified Mortensen of his right to initiate a civil action. Kern Aff., Exs. V, W.

Mortensen commenced this lawsuit in state court on March 4, 2009, alleging claims against Hib Tac for disability and age discrimination and failure to accommodate and claims against the Union for disability and age discrimination and breach of the duty of fair representation. See Notice of Removal [Docket No. 1] Attach. 1. Hib Tac and the Union timely removed the matter to this Court, and Mortensen filed his Amended Complaint in May 2009, abandoning the claims against the Union for age discrimination and breach of the duty of fair representation. At oral argument on the summary judgment motions, Mortensen withdrew his

claim against Hib Tac for age discrimination (Count III). Thus, the remaining claims are those against Hib Tac for disability discrimination (Count I) and failure to accommodate (Count II) and the claim against the Union for disability discrimination (Count IV).

### III. DISCUSSION

**A.     Summary Judgment Standard**

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**B.     Hib Tac's Motion**

    **1.     Disparate Treatment**

Hib Tac moves for summary judgment on Mortensen's disability discrimination claim for disparate treatment under the MHRA. Mortensen and Hib Tac agree that this claim is analyzed under the familiar burden-shifting framework described in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). See Baucum v. Holiday Cos., 428 F.3d 764, 766 (8th Cir. 2005) (applying the McDonnell Douglas framework to discrimination claims under the MHRA).

7

Under that framework, Mortensen must first establish a prima facie case of discrimination. McDonnell Douglas, 411 U.S. at 802. If Mortensen establishes a prima facie case, the burden shifts to Hib Tac to articulate a legitimate, nondiscriminatory reason for its actions. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981). If Hib Tac articulates such a reason, the burden shifts back to Mortensen to present evidence that Hib Tac's proffered justification is mere pretext. Libel v. Adventure Lands of Am., Inc., 482 F.3d 1028, 1034 (8th Cir. 2007). The ultimate burden of proving unlawful discrimination remains on Mortensen. See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

For purposes of its summary judgment motion, Hib Tac does not contest Mortensen's prima facie case and argues instead that, assuming he can establish a prima facie case on his disparate treatment claim, that claim fails because Hib Tac had a legitimate, nondiscriminatory reason for discharging him. The legitimate reason proffered for the discharge is that Mortensen violated Hib Tac's Performance Guidelines[3] and the last chance agreement he signed in September 2007 by his conduct of barricading himself in the janitor's supply room in January 2008. Hib Tac contends that Mortensen has failed to present evidence to show that this legitimate, nondiscriminatory reason was mere pretext. Mortensen responds that evidence of pretext exists in the record to survive adverse summary judgment. Specifically, he claims that other similarly situated employees were treated differently.

The Eighth Circuit has held:

> To demonstrate pretext, a plaintiff must present sufficient evidence to demonstrate both that the employer's articulated reason for the

---

[3] The Performance Guidelines designate "Sleeping on the job (nesting)" as an example of step 4 and step 5 inappropriate behavior. Kern Aff., Ex. B. (Performance Guidelines) § 4.6.

> adverse employment action was false and that discrimination was the real reason. This burden will not be met by simply showing that the reason advanced by the employer was false; rather, [the plaintiff] must demonstrate that a discriminatory animus lies behind the defendant['s] neutral explanations. Specifically, the plaintiff must do more than simply create a factual dispute as to the issue of pretext; he must offer sufficient evidence for a reasonable trier of fact to infer discrimination.

Wilking v. County of Ramsey, 153 F.3d 869, 874 (8th Cir. 1998) (quotations omitted) (alterations in original). Instances of disparate treatment of other similarly situated employees can support a claim of pretext, but a plaintiff "has the burden of demonstrating that there were individuals similarly situated in all relevant aspects to [him] by a preponderance of the evidence." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000). "The test for whether employees are similarly situated to warrant a comparison to the plaintiff is rigorous." Saulsberry v. St. Mary's Univ. of Minn., 318 F.3d 862, 867 (8th Cir. 2003) (quotations omitted). "Specifically, the individuals used for comparison must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Id. Here, the record falls far short of making the requisite showing that the other employees sought to be used as a comparison were similarly situated to Mortensen in all relevant aspects.

In his Amended Complaint and his summary judgment brief, Mortensen makes vague references to other employees who were similarly situated in the sense that they, too, were caught nesting or sleeping on the job but were not discharged. He contends that it was a "common practice," that supervisors knew about it, and that there is no evidence of any other employees being discharged for barricading the door to the supply room. Pl.'s Mem. Opposing Sum. J. [Docket No. 68] at 9. Mortensen cites an affidavit of a former employee who stated that

9

he was "aware of multiple occasions in which a janitor resting in the [supply room] has blocked the door to the closet" and that "[t]o the best of [his] knowledge, none of these individuals were terminated for blocking the door." Rasmus Decl., Ex. 3 (Power Aff.) ¶ 7. In addition, Mortensen avers that, like him, another employee named Gary Scherf ("Scherf") violated Hib Tac's rules after having signed a last chance agreement, but, unlike him, was not discharged.

Absent from the record or Mortensen's arguments, however, are any specific facts demonstrating that the other unnamed employees or Scherf dealt with the same supervisor, were subject to the same standards, and engaged in the same misconduct *without any mitigating or distinguishing circumstances*. There is no evidence in the record to suggest that, like Mortensen, the other unnamed employees committed a nesting or sleeping infraction, were instructed to refrain from such conduct, and then were again found to be nesting or sleeping *two more times during the same shift*. Nor is there any evidence that any other employees, including Scherf, were similarly situated to Mortensen in that they were accused of barricading a door while they were subject to a last chance agreement that had been implemented for precisely the same misconduct only four months before the final incident. On the contrary, the record shows that Scherf's circumstances were materially different: Scherf signed a last chance agreement for misconduct unrelated to nesting, sleeping or barricading; Scherf's subsequent infraction occurred when he was "no longer subject to termination based on a violation of the Last Chance Agreement terms because all terms had been fulfilled"; and Scherf's subsequent rules infraction was not for the exact same conduct that prompted the last chance agreement. Kern 2d Aff. [Docket No. 75] ¶¶ 2-3; Rasmus Decl., Ex. 1 at 2.

Even when viewed in the light most favorable to Mortensen, the evidence is insufficient

10

for a reasonable trier of fact to infer discrimination. Accordingly, Hib Tac is entitled to summary judgment on Mortensen's disability discrimination claim based on disparate treatment (Count I).

## 2. Failure to Accommodate

In Count II, Mortensen asserts a claim against Hib Tac for failure to make reasonable accommodations. To establish a prima facie case of disability discrimination on a failure to accommodate claim, Mortensen must show that he (1) is disabled within the meaning of the MHRA, (2) is qualified to perform the essential functions of his job with or without reasonable accommodation, and (3) suffered an adverse employment action because of his disability. McCain v. Andersen Corp., 567 F.3d 956, 967 (8th Cir. 2009). Mortensen also must show that Hib Tac knew of, and failed to reasonably accommodate, his disability. Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 784 (8th Cir. 2004).[4]

As a threshold matter, Hib Tac argues that Mortensen's failure to accommodate claim fails because it is time barred. The MHRA imposes a one-year statute of limitations, requiring all charges of discrimination to be filed within one year of the alleged discrimination. Minn. Stat. § 363A.28, subd. 3. Mortensen filed his discrimination charge with the EEOC on November 19, 2008, thus, any conduct occurring prior to November 19, 2007, is time barred. Hib Tac contends that the latest alleged failure to make a reasonable accommodation or engage

---

[4] Discrimination in a failure to accommodate claim "is framed in terms of the failure to fulfill an affirmative duty . . . to reasonably accommodate the disabled individual's limitations. Consequently, the employer's intent is irrelevant, and the McDonnell Douglas framework does not apply." Regan v. Natural Res. Group, Inc., 345 F. Supp. 2d 1000, 1017 (D. Minn. 2004) (citing Kammueller, 383 F.3d at 788; Peebles v. Potter, 354 F.3d 761, 766-67 (8th Cir. 2004)).

11

in a good-faith, interactive process to find a reasonable accommodation occurred no later than the September 17, 2007 meeting at which Hib Tac presented the last chance agreement and Mortensen explained his need for an accommodation.

Mortensen responds that the one-year statute of limitations does not bar his failure to accommodate claim under the continuing violations doctrine. "This doctrine tolls the statute of limitations in situations where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period." Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 573 (8th Cir. 2000). "The doctrine is available when the unlawful employment practice manifests itself over time, rather than as a series of discrete actions," but the manifestation "must be more than the mere consequence of past discrimination—the proper focus is [on] the time of the discriminatory acts, not [on] the time at which the consequences of the acts became most painful." Id. (quotations omitted).

Mortensen testified at his deposition that he asked for reasonable accommodations for his back condition prior to September 2007, and he repeated his need for such accommodations at the pre-suspension hearing and the September 17, 2007 meeting regarding the last chance agreement. Mortensen Depo. at 102:6-21. He alleges in his Amended Complaint that had Hib Tac engaged in a good-faith effort to find a mutually acceptable accommodation, he would have received "neither his first nor his second round of discipline, and would still be employed at [Hib Tac]." Am. Compl. ¶¶ 54-55. Mortensen contends, therefore, that the last chance agreement itself is discriminatory because it would not have been forced on him had Hib Tac not failed to make a reasonable accommodation.

12

However, the claimed failures to accommodate that lead to the imposition of the last chance agreement occurred outside the one-year statutory period for MHRA claims. Mortensen "may not have felt the effect of the [last chance agreement] until he breached [it] and was, consequently, terminated," but under well-established law, "any claim he might have arising directly from the imposition of [the last chance agreement itself] is time-barred." Longen v. Waterous Co., No. Civ. 02-367, 2002 WL 1906027, at *2-3 (D. Minn. Aug. 13, 2002) (rejecting the argument that a last chance agreement was discriminatory and concluding that even if it were, the ability to challenge the propriety of the last chance agreement accrues, and the statute of limitations begins to run, when the last chance agreement was imposed, not when it was enforced after a subsequent breach) (citing Delaware State College v. Ricks, 449 U.S. 250 (1980)).

Because Mortensen's failure to accommodate claim is time barred, the Court need not address Hib Tac's arguments that the claim also fails for lack of causation, because Mortensen failed to request an accommodation, and because Hib Tac made a reasonable accommodation. Accordingly, Hib Tac is entitled to summary judgment on Count II.

**C.     The Union's Motion**

In Count IV of the Amended Complaint, Mortensen asserts a claim against the Union for disability discrimination in violation of the ADA. Although Mortensen's claim is not, in its own right, a claim for breach of the duty of fair representation, "in order for a union to be held liable under the ADA, there must be a finding that it breached its duty of fair representation." Wood v. Crown Redi-Mix, Inc., 218 F. Supp. 2d 1094, 1106 (S.D. Iowa 2002). A union breaches its duty of fair representation when its conduct is "arbitrary, discriminatory, or in bad faith." Baxter v.

United Paperworkers Int'l Union, Local 7370, 140 F.3d 745, 747 (8th Cir. 1998). Numerous courts in the Eighth Circuit that have encountered claims for breach of the duty of fair representation based on discrimination have also required, quite logically, "some indication of discriminatory animus motivating the union's behavior." See Wood, 218 F. Supp. 2d at 1107 (citing Bugg v. Int'l Union of Allied Indus. Workers, Local 507 AFL-CIO, 674 F.2d 595, 598 n.5 (7th Cir. 1982)); Allen v. Linn County Sherriff's Dep't, Nos. 04cv0083, 04cv0084, 2006 WL 1562487, at *12 (N.D. Iowa June 1, 2006); Shelton v. Boeing Co., No. 4:02CV286SNL, 2004 WL 5831717, at * 5 (E.D. Mo. Mar. 3, 2004); see also Centeno v. Teamsters Local Union 120, Civil No. 06-3772, 2007 WL 4287668, at *1 (D. Minn. Dec. 5, 2007) (holding that a prima facie discrimination case under Title VII[5] against a union based on a failure to provide adequate representation requires a showing that the union breached its duty of fair representation and that the breach was motivated by some discriminatory animus).

Mortensen faults the Union for advising him to refrain from mentioning at his disciplinary hearings and the arbitration that other Hib Tac employees commonly slept and nested on the job and that Hib Tac management implicitly condoned such conduct by not imposing disciplinary measures against those employees. In his brief, he argues that there is a genuine issue as to whether the Union "acted in bad faith" in advising Mortensen. However, Mortensen has failed to identify any evidence to support the allegation in his Amended Complaint that the Union's alleged bad faith approach to representing Mortensen during the disciplinary hearings and the arbitration was motivated by Mortensen's disability. Likewise,

---

[5] "The ADA incorporates the procedures and enforcement mechanisms of Title VII. Accordingly, guidance on the proper analysis of [Mortensen's] ADA . . . claim is found in Title VII cases." Wood, 218 F. Supp. 2d at 1106 n.9 (quotation omitted).

Mortensen has failed to offer supporting evidence of his conclusory assertion that a genuine issue exists as to whether the Union's alleged bad faith "was based upon discriminatory animus." Pl.'s Mem. Opposing Sum. J. [Docket No. 71] at 1.

Mortensen has failed to raise a genuine issue as to whether the Union's handling of his disciplinary hearings and arbitration was motivated by discriminatory animus. Because the Union is entitled to summary judgment on Mortensen's ADA claim (Count IV), the Union's remaining arguments in support of its summary judgment motion are not reached.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Hib Tac's Motion for Summary Judgment [Docket No. 43] is **GRANTED**;

2. The Union's Motion for Summary Judgment [Docket No. 49] is **GRANTED**; and

3. Mortensen's Amended Complaint [Docket No. 19] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                          BY THE COURT:

                                          s/Ann D. Montgomery
                                          ANN D. MONTGOMERY
                                          U.S. DISTRICT JUDGE

Dated: June 1, 2010